MARION G. DINSMORE, Trading as F. M. Dinsmore
& Company,

*vs.*

MAAG-WAHMANN COMPANY OF BALTIMORE.

*Written contracts : parol testimony ; how figures in contract were
reached.   Sales of personal property : possession in vendee ;
title ; conditional sales ; chattel mortgages ; bills of
sale ; recording of——.   Uniform Sales Act :
Code, Article 83, sections 22 and 39.*

Testimony explaining how a written contract was formed or
arrived at, is not prohibited by the rule that written instru-
ments are not to be varied, added to or explained by parol testi-
mony.                                                  p. 181

Where a contract upon which suit was based states the pur-
chase price to have been a certain sum, testimony may be ad-
mitted to show that the actual purchase price was a larger
sum, but that an article had been taken in exchange, at an
agreed price, as part of the consideration, and that the written
contract price was for the difference.·                p. 181

Section 43 of Article 21 of the Code, relating to sales or
mortgages of personal property, has no application to condi-
tional sales where the vendor parts with possession.   p. 182

Conditional sales where the contract provides that the title
and ownership of the thing sold, although delivered to the pur-

chaser, shall not vest in him, until the purchase price therefor is paid, are recognized under the Uniform Sales Act, Article 83, sections 22 and 39 of the Code, and such contracts are neither unconscionable nor in contravention of public policy.        p. 182

Article 21, section 43 of the Code, relating to bills of sale or mortgages, where a vendor, mortgagor or donor of personal property remains in possession of the chattel, has no application to conditional sales, where the vendor parts with possession.                                                          p. 182

*Decided January 13th, 1914.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*John Holt Richardson* and *George Washington Williams*, for the appellant.

*C. Arthur Eby* (with whom was *Ernest C. Hatch* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellee, the Maag-Wahmann Company, on the 22nd day of July, 1912, through Joseph D. Maag, a stockholder and salesman of said company, sold a bake oven with pyrometer unto one Emil Keppler, who conducted a bakery and general merchandise store at North Point, Baltimore County, Maryland. At the time of the delivery of said property a contract was executed by Maag, for and on behalf of the Maag-Wahmann Company, and Emil Keppler. By it the purchase price of the oven was stated to be $275.90. This was to be paid in instalments of $25, payable on the 22nd day of each month, accounting from August, 1912. The property was to be held by Keppler as the property of the

Maag-Wahmann Company and the title thereto was to remain in said company and was not to be acquired by Keppler until the purchase price was fully paid. Keppler was not to remove the property from his place of business, where it was to be located, nor to sell or pledge it, or any part of it, without the consent in writing from said company, and upon default in any of. said payments and conditions, or in case of any other breach of the agreement, Keppler's right to the possession of said goods terminated, and the Maag-Wahmann Company was authorized to enter upon his premises, or wherever the same might be found, and take possession of said property, in which case the money paid on account prior to such re-taking was to be held as compensation for the use of the goods and no part thereof was to be returned to Keppler. The contract also provided that the company, at its option, could give more time for the payment of the instalments and accept smaller payments than were mentioned and agreed upon in such contract, without vitiating it in any particular, but upon the completion of said payments and the full performance of the contract on the part of Keppler the property was to be his.

The appellant, F. M. Dinsmore & Company, on February 20th, 1913, sued out an attachment against Keppler as an absconding debtor, upon an indebtedness of $155.14 owing to it by Keppler. Under this attachment the oven mentioned, together with certain other property, not including the merchandise in the store, was seized and levied upon, and in the course of the proceedings an order of Court was obtained under which the property so attached was thereafter sold and the proceeds deposited in Court.

On March 8th the appellee company came into Court and claimed the oven and pyrometer to be its property and not subject to condemnation under the attachment for the debt owing by Keppler to the appellant. Issues being joined thereon, the case was heard by the Court, sitting as a jury, and the trial resulted in a verdict for the claimant for the sum of $189.09, the amount found by the Court to be due on

the purchase price for said oven, and upon which a judgment was thereafter entered for that amount, with interest and costs.

In the progress of the trial two exceptions were taken to the admission of the testimony and one to the ruling of the Court upon the prayers.

The contract of sale was offered in evidence by the plaintiff, but was objected to by the defendant and admitted by the Court subject to exception.

The attention of Maag, the party by whom the property was sold to Keppler and by whom the contract was executed for and on behalf of the Maag-Wahmann Company, when upon the stand, was called to the fact that the contract stated the price to be $275.90, and he was asked "Was that the full purchase price for this oven?" to which he replied that it was not, that the full purchase price was $450.90. He was then asked why the contract stated it to be $275.90; this question was objected to but admitted under the exception. The witness in answer to the question stated that the oven was sold for $450.90; that in part payment therefor the old oven was taken, for which Keppler was allowed $125, and at such time $50 was paid in cash; this left the amount of $275.90, which amount is named in the contract and is the amount that was to be paid in monthly instalments of $25. The witness then testified that four payments were thereafter made upon the purchase price of the oven, three of $25 each, and one of $11.81, making in all $86.81, which reduced the amount owing under the contract to $189.09.

The only other witness who testified in the case was the sheriff, who was produced on the part of the plaintiff. At the conclusion of his testimony the defendant moved to strike out of Maag's testimony all reference to any other price of the oven than the one mentioned in the contract of sale. This motion was overruled. This is the first exception.

We find no error in the ruling of the Court in admitting this testimony. The price or amount that the Maag-Wahmann Company charged and received for ovens of this size and

character was $450.90, and this was the amount at which they had negotiated with Keppler for the oven sold to him, but that amount had been reduced, prior to the execution of the contract, by the acceptance of the old oven, at an allowance therefor of $125, and a cash payment of $50, leaving $275.90 owing by Keppler at the time the contract was executed, and it was for the payment of this amount in monthly instalments that this contract provided. It was the price or amount to be paid in monthly payments before he was to acquire title to the property mentioned in the contract.

The admission of this testimony we think is entirely proper and in no sense violates the general rule of law that forbids a written instrument to be varied, added to, or explained by parol testimony.

The second exception, which is to the admission of the contract in evidence, will be considered in connection with the ruling upon the prayers.

The defendant offered three prayers, all of which were refused. The plaintiff asked for no instructions. The first prayer of the defendant asked the Court to instruct the jury that there was no legally sufficient evidence to entitle the claimant to recover; the second, that there was no legally sufficient evidence to show a conditional sale of the oven; and by the third prayer the Court was asked to instruct the jury "that from the undisputed evidence in this case the instrument mentioned in the evidence was executed more than six months prior to the issuing of the attachment, and that the said instrument had not, at the time of the issuing of said attachment, been recorded, and that there is no evidence legally sufficient to show notice, either actual or constructive, of the existence of the said instrument on the part of the plaintiff in the attachment."

The second exception, which goes to the admissibility of the contract, and the exceptions to the ruling upon the prayers all raise the question as to the necessity of recording contracts of conditional sales, as other instruments of writing specifically named in the registration Acts are recorded, in

order to protect the rights of the claimants thereunder in attachment proceedings where the property so sold is sought to be condemned for the payment and satisfaction of an indebtedness owing by the vendee to such attaching creditor.    In this case the contract was not recorded.

The validity of these so-called conditional sales, where the contract provides that the title and ownership of the thing sold, although delivered to the purchaser, shall not vest in him until the purchase price therefor is paid, is recognized under what is known as the Uniform Sales Act, Article 83, sections 22 and 39, and their validity has always been recognized by this Court, as well as by the Courts of many other States of the Union, where it has been held that such contracts are not unconscionable and that they do not in any way contravene public policy.    35 *Cyc.* 664, and the cases cited in the note thereto.

"It is provided in many States that to give conditional contracts of sale validity as against third persons claiming under the buyer, as purchasers or creditors, the contract must be in writing executed and attested in a particular manner and recorded. *'In the absence of such a statute recording is not essential."*    35 *Cyc.* 682.

It is provided in section 43 of Article 21, that "No personal property whereof the vendor, mortgagor or donor shall remain in possession, shall pass, alter or change, or any property therein be transferred to any purchaser, mortgagee or donee, unless by bill of sale or mortgage acknowledged and recorded as herein provided; but nothing herein shall be construed to extend to any sale or gift, where the same is accompanied by delivery, nor to invalidate such transfer as between the parties thereto."

This provision, as we construe it, has no application to conditional sales where the vendor parts with possession; the section referred to applies to cases where the vendor, the owner of the property, sells the property and *retains* possession of it, and we know of no other provision of the statute from which it can be gathered that such contracts of sale shall

be recorded, as contended for by the appellant, in order to give to them the effect contended for by the appellee; nor has this Court ever held that it was necessary, in order to protect the seller's rights thereunder, to record such contracts, and we now see no reason for so holding.

The defendant or appellant in this case is not in the position of a *bona fide* purchaser or pledgee of property without knowledge of the rights of the appellee under such alleged contract of sale, but is an attaching creditor, and such defendant, under the general rule, can only assert such right as Keppler had. The attaching creditor, as a general principle, is subrogated to the rights of the debtor as against the garnishee, and can only recover the same rights, to the same extent, as the debtor might were he suing the garnishee. And accordingly, if the garnishee has a valid lien or claim upon the property attached, growing out of a contract, express or implied, between himself and the debtor, or is in a situation to assert any legal rights against such property, the attaching creditor is equally affected by the lien, claim or right on the part of the garnishee. 2 *Poe's Pleading and Practice,* (3rd Ed.) sec. 531; *Lemp Brewing Co.* v. *Mantz,* 120 Md. 183.

There are, however, a number of well established exceptions to this rule, but the facts disclosed by the record here do not show that this case falls within any of the exceptions. We think the contract was properly admitted in evidence, and being so admitted, the Court properly excluded the prayers of the defendant. The judgment will therefore be affirmed.

*Judgment affirmed, with costs to the appellee.*