## Sherer-Gillett Company, Appellant, v. J. W. Long, Appellee.

### Gen. No. 29,516.

**1.** SALES—*provisions of Act as controlling in construction of Uniform Sales Act.* In interpreting the provisions of the Uniform Sales Act the court must look to the provisions of the Act for its intention rather than to prior decisions which run counter thereto.

**2.** SALES—*title of purchaser without notice from conditional purchaser under Uniform Sales Act.* Under the provisions of sections 20 and 23 of the Uniform Sales Act, Cahill's Ill. St. ch. 121a, ¶¶ 23, 26, one who conditionally sold a display case, retaining title until the purchase price was paid, doing nothing to clothe the purchaser with indicia of ownership except to deliver possession and permit its use in the purchaser's store, was entitled to recover possession thereof by a suit in replevin from a third person who purchased it from the vendee without notice of the vendor's title.

**3.** SALES—*Uniform Sales Act as contrary to public policy of recording acts.* A contract of conditional sale is not a chattel mortgage and there being no recording act applicable to such contracts a sale of an article with delivery of possession but with retention of title in the seller does not contravene the public policy of the recording acts.

**4.** SALES—*implied repeal of common law by Uniform Sales Act.* Where the clearly expressed provisions of the Uniform Sales Act contravene the common law on the subject the repeal of the latter is implied.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. JOHN RICHARDSON, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1924. Reversed and judgment here. Opinion filed February 6, 1925.

WINTERS, STEVENS, RISK & GRIFFITH and JAMES G. ELDSON, for appellant; JAMES G. ELDSON, GEORGE M. STEVENS and JULIAN C. RISK, of counsel.

V. L. LINDERHOLM, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an action of replevin brought by the seller, in a contract of conditional sale, against a purchaser from the buyer without notice.

By the terms of the contract, dated April 3, 1924, the buyer was to pay plaintiff, the seller, for a display counter $10 in cash on April 5, 1924, and $10 per month thereafter until the full purchase price was paid, and the title was to remain in the seller until full payment thereof was made. When plaintiff called for the cash payment on April 5, he found the buyer had sold the counter to defendant, and that it had been removed from the buyer's grocery store, from which he had agreed not to remove it without the seller's consent, to defendant's grocery store at another place, from which it was replevined.

On submission of the case to the court upon these undisputed facts and certain propositions of law, the finding was for defendant, and from the judgment thereon plaintiff appeals.

The question, therefore, is whether a reservation of title by the seller in a contract of conditional sale is valid against a purchaser without notice from a buyer in possession under such contract.

Prior to the passage of the Uniform Sales Act in 1915 by our legislature it was held in this State that at common law the attempt of the seller to retain title under such circumstances was void as to a subsequent purchaser without notice. (*Gilbert v. National Cash Register Co.*, 176 Ill. 288, and cases there cited.) The contrary was held in many other jurisdictions. (Williston on Sales, pp. 506-8.)

It was undoubtedly because of the wide divergence of opinion on this and other subjects in relation to sales, and to secure uniformity of construction, that the Uniform Sales Act was prepared and has been adopted in many of the states, including our own. With uniformity in view, as its text clearly denotes

(section 74 of the Act, Cahill's Ill. St. ch. 121a, ¶ 77), the terms of the Act were manifestly intended to prevail over prior decisions in conflict therewith, and to supersede the law as differently interpreted. If it has changed the policy of the law in any respect, that of course is a matter within the province of the legislature, and we must look to its intention as indicated by the provisions of the Act rather than to prior decisions which run counter thereto.

In spite of this, however, counsel for appellee urges upon our attention decisions rendered by our Supreme Court before the adoption of the Act in this State, including the *Gilbert* case, *supra.* But as was fittingly and forcibly said by Mr. Justice Hughes in *Commercial Nat. Bank of New Orleans v. Canal-Louisiana Bank & Trust Co.,* 239 U. S. 520, 528, with respect to decisions there relied on which had been rendered prior to the enactment of the Warehouse Receipts Act there under consideration:

"It is said that under the law of Louisiana, as it stood prior to the enactment of the uniform warehouse receipts act, the Commercial Bank would not have taken title as against the Canal-Louisiana Bank (citations omitted); and it is urged that the new statute is but a step in the development of the law and that decisions under the former state statutes are safe guides to its construction. We do not find it necessary to review these decisions. It is apparent that if these uniform acts are construed in the several states adopting them according to former local views upon analogous subjects, we shall miss the desired uniformity, and we shall erect upon the foundation of uniform language separate legal structures as distinct as were the former varying laws. It was to prevent this result that the uniform warehouse receipts act expressly provides (sec. 57): 'This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it.' This rule of construction requires that in order to accomplish the beneficent object of unifying,

so far as this is possible under our dual system, the commercial law of the country, there should be taken into consideration the fundamental purpose of the uniform act, and that it should not be regarded merely as an offshoot of local law.''

This reasoning is equally applicable to the Uniform Sales Act, sec. 74, which contains language with regard to interpretation identical with that quoted in said opinion from the Warehouse Receipts Act.

Section 1 of the Uniform Sales Act [Cahill's Ill. St. ch. 121a, ¶ 4], after defining a contract to sell goods and what is a sale of goods, states in paragraph (3), ''a contract to sell or a sale may be absolute or conditional.'' Section 20 of said Act [Cahill's Ill. St. ch. 121a, ¶ 23] provides:

''(1) Where there is a contract to sell specific goods, or where goods are subsequently appropriated to the contract, the seller may, by the terms of the contract or appropriation, reserve the right of possession or property in the goods until certain conditions have been fulfilled. The right of possession or property may be thus reserved notwithstanding the delivery of the goods to the buyer  *  *  *.''

Section 23 [Cahill's Ill. St. ch. 121a, ¶ 26] provides:

''(1) Subject to the provisions of this Act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.''

As there could hardly be language more explicit it does not seem to call for construction. Applied to the undisputed facts here, the seller having reserved the title in itself until the purchase price should be fully paid, as it might do under section 20, ''notwithstanding the delivery of the goods to the buyer,'' and not having given its authority or consent to the buyer to sell the same, the latter acquired no title, and therefore could not confer title upon a purchaser from him

"unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell."
As is frequently said, a party cannot confer a better title than he has himself, unless under some doctrine of estoppel.

While appellee invokes the doctrine of estoppel there are no facts in the case on which to predicate it. There was no proof of any particular thing said or done by the owner calculated to deceive the purchaser or upon which he might rely, and nothing in the transaction that clothed the possessor with indicia of ownership. Nothing was said outside of what was in the contract, which expressly reserves the title in the seller, and nothing was done except to deliver a copy of the contract and possession of the property. Mere possession is not enough to clothe one with the indicia of ownership, and if there is no other evidence of property given by the owner, it alone will not enable the possessor to give a good title. (*Drain v. LaGrange State Bank*, 303 Ill. 330: Ruling Case Law, vol. 24, p. 375.) And the transfer of possession does not in itself create an estoppel. (Williston on Sales, sec. 313.) The property involved here is not of that character from which the right to resell may be implied, as where the buyer is authorized to put goods in his stock, or otherwise make it seem that the goods are his. The possession and use of the counter in the buyer's store is not at all inconsistent with another's ownership of it.

But appellee contends in substance that as the reservation of the title is in the nature of security for the purchase price, the seller undertook to acquire a secret lien, contrary to the policy of our recording acts, and refers to what was said in the *Drain* case and decisions rendered prior to the passage of the Uniform Sales Act against the rendition of a secret lien for the payment of goods. The Uniform Sales Act was not

referred to in that case, and its interpretation was apparently unnecessary to a decision of the case. On the contrary the court pointed out familiar instances where possession is given and the possessor is not enabled thereby under the common law to give title to the goods. Appellee's contention, as we understand it, is that as section 23 of the Sales Act provides that nothing in the Act shall affect the provisions of "recording acts," plaintiff is claiming the right to retain a lien without complying with any recording act designed to protect it. No recording act applicable to a contract of conditional sale is pointed out. Such a contract is not a chattel mortgage (*Gilbert v. National Cash Register Co.*, 176 Ill. 288), and while in some states compliance with a statute for recording conditional sales is necessary to protect the owner's title we have no such statute. Nor is plaintiff's action one to enforce a lien but one to recover possession of its own property.

While so far as we are informed there has been no interpretation of the Uniform Sales Act on this subject by the courts of this State, yet courts of other jurisdictions where the Act was in force have held that the validity of conditional sales where the contract provided for the retention of the title to the goods in the seller, although delivered to the buyer, until the full purchase price was paid, is recognized by that Act. It was expressly so held in *In re Seward Dredging Co.*, 242 Fed. 225; *Studebaker Bros. Co. of Utah v. Witcher*, 44 Nev. 442, 195 Pac. 334, and *Dinsmore v. Maag-Wahmann Co. of Baltimore*, 122 Md. 177, 89 Atl. 399; and, as said in the case last cited, such an Act does not contravene public policy. It establishes it.

Counsel for appellee says there is no repeal of the common law as interpreted in this State on the subject of conditional sales. If the statute in question is unambiguous, leaving no room for construction as to

the intention of the legislature, as by its plain provisions we are bound to hold, then it must be held to supersede the common law when differently interpreted, and its repeal will be implied.

Accordingly the judgment is reversed and a judgment will be entered in this court finding the right of property in appellant, and assessing appellant's damages at one cent.

*Reversed and judgment here.*

FITCH, P. J., and GRIDLEY, J., concur.