## HUETTNER *v.* THE SAVINGS BANK OF BALTIMORE

[No. 207, September Term, 1965.]

478

*Decided May 24, 1966.*

The cause was argued on 2/3/66 before HAMMOND, HORNEY, MARBURY, BARNES and McWILLIAMS, JJ. and reargued on 4/28/66 before the entire Court.

Argued by *Samuel D. Hill,* with whom were *Buckmaster, White, Mindel & Clarke* on the brief; reargued by *Everett L. Buckmaster* and *Samuel D. Hill,* with whom were *Buckmaster, White, Mindel & Clarke* on the brief, for appellant.

Argued and reargued by *Charles T. Albert,* with whom were *Piper & Marbury* and *Joseph H. Young* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This is an appeal from the judgment for costs entered by the lower court following the direction of a verdict in favor of The Savings Bank of Baltimore (defendant-appellee) in a suit brought by Clarence J. Huettner (plaintiff-appellant) for the conversion of an automobile purchased by the plaintiff-appellant but subsequently repossessed by the defendant-appellee.

The basic issue is whether the defendant had a right to repossess the automobile from the plaintiff. The appellant (usually hereinafter referred to as the purchaser) contends that the repossession by the appellee (usually hereinafter referred to as the bank) constituted a conversion (i) because the bank did not have title to the automobile; (ii) because the conditional sales agreement had not been properly recorded; and (iii) because the bank was estopped from asserting ownership of the automobile.

The automobile in question was one of one hundred and eighty 1959 Chevrolets purchased by Bittorf Ford from the Health Department of the State of Maryland and thereafter sold to Kernan Motors (usually hereinafter referred to as the buyer or dealer) under a conditional sales agreement which, after having been transferred and assigned to the bank, was recorded on the conditional contract of sales docket in Baltimore City. Kernan (as buyer) was given possession of all of the automobiles as well as their respective certificates of title. He displayed the automobiles, including the one in controversy, on a sales lot and was allowed to hold all certificates of title. With respect to the subject automobile, Bittorf (the seller) assigned the certificate of title to Kernan (the buyer) without indicating thereon that the automobile was encumbered. Under the terms of the as-

signed conditional sales agreement, the dealer was supposed to pay the bank a certain amount, approximately $900, from the proceeds of each sale that was made.

The purchaser, having bought the automobile without checking the conditional sales records to ascertain whether it was subject to a lien, paid the dealer the purchase price of $1195 in cash and took possession of it. The dealer reassigned the apparently lien-free certificate of title to him and, in due course, a new certificate of title, indicating that the automobile was not encumbered, and a registration card, were issued to the purchaser by the Department of Motor Vehicles (D.M.V.). The dealer, however, did not pay the bank the amount due it from the sale of this automobile nor the amounts due it from other sales made around the same time. And when the default was discovered, the bank repossessed the automobiles which were still on the sales lot as well as such of those it could find that had been sold out of trust including the one the purchaser had bought.

(i)

The contention of the purchaser that the bank did not have title to the automobile at the time it was repossessed is based on the fact that the seller (Bittorf) turned over possession of all of the automobiles and assigned the certificates of title thereto to the buyer (Kernan) without indicating thereon that the automobiles were encumbered. This, however, not only ignores the terms of the conditional sales agreement but the further fact that the agreement had been assigned to the bank as security for the money the seller had borrowed to purchase the automobiles from the Health Department, all of which could have been ascertained had the purchaser, instead of relying solely on the certificate of title, taken the precaution to examine the conditional sales records. Since the first provision of the conditional sales agreement provided that "title to said car [1]

---

1. The conditional sales agreement was executed on a printed form normally used in connection with the sale and purchase of a single motor vehicle; the description on the face of the agreement of the one hundred and eighty automobiles, except for the motor and serial numbers, was a general description of all the vehicles; but each was separately designated by the respective serial num-

shall remain in the seller until all amounts due hereunder are paid in cash" and that the "agreement may be transferred or assigned, or the payment thereof renewed or extended without passing title to said car to buyer," it is apparent that title to the subject automobile was to remain in the seller, or his assignee, until the conditions were satisfied. There was therefore nothing in the agreement between the seller and buyer indicating that it was anything but a typical conditional sales contract whereby possession was delivered to the buyer but title and general ownership remained in the seller, or the bank as assignee, pending payment of the purchase price by the buyer-dealer, who sold the automobile to the purchaser. Such contracts have long been held to be valid and enforceable in this State. See *Dinsmore v. Maag-Wahmann Co.,* 122 Md. 177, 89 Atl. 399 (1914). Furthermore, since the delivery of possession to the buyer under a conditional contract of sale is an essential characteristic of such a transaction, it is clear that the purchaser was not entitled to rely on the fact that the dealer had possession. Rather, inasmuch as the primary purpose of the recording statutes was to afford protection against the consequences of false or misleading appearances of ownership based on possession, *Mohr v. Sands,* 213 Md. 206, 131 A. 2d 732 (1957), the purchaser, not the bank, was obliged to protect himself.

The further contention of the purchaser that the intention of the seller to transfer an unencumbered title to the automobile was evidenced by the assignment of the certificate of title to the dealer without noting therein the existence of a lien, as required by § 47(b) of Article 66½, concerning the sale and transfer of a motor vehicle from one registered dealer to another, overlooks the fact that while a conditional sales contract is an encumbrance within the meaning of the statute, *cf. Auto. Acceptance Corp. v. Universal C.I.T. Credit Corp.,* 216 Md. 344, 139 A. 2d 683 (1959), the absence of its notation on the certificate of title did not mean that an encumbrance did not exist. The certificate of title issued by the D.M.V. is not a warrant of absolute ownership but is merely an indicia of own-

bers set forth in a typewritten list thereof attached to and made a part of the conditional sales agreement.

ership, which, like possession, may be rebutted by other evidence. That this is a proper interpretation of those parts of Article 66½ concerning the registration and titling of motor vehicles is not only apparent from the wording of the statute, but from the fact that it is not a recording statute as was recognized by this Court in *Auto. Acceptance Corp. v. Universal C.I.T. Credit Corp., supra* (at p. 355 of 216 Md.) ; *Phillips v. J. F. Johnson Lumber Co.,* 218 Md. 531, 539, 147 A. 2d 843 (1959) ; and *Piedmont Land & Development Co. v. Carney,* 232 Md. 21, 24, 192 A. 2d 67 (1963). That the D.M.V. is "not a record office for the recording of liens" and does "not guarantee the statement as to liens" is set forth on the face of every certificate of title issued pursuant to the statute.

If there was no evidence to the contrary, the certificate could be used to prove that an unencumbered title had been transferred to the dealer but in this case the conditional sales agreement between the seller and buyer-dealer makes it clear that the parties intended that title was to remain in the seller. Whether or not title passes is a question of intention to be determined as of the time of the agreement and in the light of the situation of the parties, their purpose, the thing they sought to accomplish and the method employed. See *Beckwith Machinery Co. v. Matthews,* 190 Md. 182, 192, 57 A. 2d 796 (1948).

Since the seller retained title to the automobile under the conditional sales agreement, the bank acquired the same title when the agreement was assigned to it by the seller. The rule is that an absolute and unconditional assignment of a conditional sales contract by the seller or vendor vests in the assignee of the contract such right, title and interest in the property as the assignor had. *McClung-Logan Equip. Co. v. Thomas,* 226 Md. 136, 172 A. 2d 494 (1961) ; *Burrier v. Cunningham Piano Co.,* 135 Md. 135, 108 Atl. 492 (1919). Such a contingency was specifically provided for in the conditional sales agreement under attack in this case. Under the circumstances only one conclusion can be reached on the record and that is that the bank had title to the automobile when it was repossessed from the purchaser.

## (ii)

The contention of the purchaser that the conditional sales agreement was not properly recorded is based on the claim that the description of the automobile entered by the clerk on the conditional contract of sales docket was insufficient to satisfy the requirement of § 66 of Article 21 and that as a result whatever title the bank had was ineffective as to the purchaser. As of the time of this transaction,[2] the statute provided:

> "Every * * * contract for the sale of goods * * * wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall in respect to such reservation and condition, be void as to subsequent purchasers, mortgagees, [and] encumbrancers * * * until such * * * contract be in writing, signed by the vendee and be recorded. * * *. Such recording shall be sufficient to give actual or constructive notice to such parties when a memorandum of the paper writing signed by the vendee * * * setting forth the date thereof, the amount due thereon, when and how payable and a brief description of the goods and chattels therein mentioned shall have been recorded with the clerk * * *."

The deputy clerk who recorded the conditional sales agreement testified that he followed the same procedure in entering this particular recordation that had been used since conditional sales contracts have been recorded. He further testified that "only a short description of the property" is required and that the description he entered on the docket filled the space available for that purpose.

---

2. Section 66 of Article 21 was repealed by Chapter 538 of the Laws of 1963, effective February 1, 1964. See Code (1964 Replacement Volume 8B, Article 95B (Uniform Commercial Code), § 10-102. Now under § 9-307(1) of Article 95B "a buyer in ordinary course of business * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

In the main, the purchaser, relying on an opinion of the Attorney General of Maryland, dated December 7, 1956 and reported in 41 O.A.G. 115, to the effect that the description of the goods and chattels entered on a conditional contract of sales docket should be such as to enable anyone examining the record to identify them without looking elsewhere, argues that the description of the automobile did not comply with the requirements of the recording statute. We do not agree that what was said is the law in Maryland with respect to a notice type of statute, such as the one under consideration. Unlike chattel mortgages and bills of sale, the contents of which, including a full "description of the property to be conveyed", must be recorded at length *in a chattels record book,* the recordation of a conditional contract of sale, aside from the names of the seller and buyer, the date, the amount to be paid and when and how it is payable, requires only a "brief description of the goods and chattels" to be entered *on a conditional sales docket.* The only case cited by the Attorney General with regard to the adequacy of the description was *State use of Horsey v. Maryland Casualty Co.,* 164 Md. 69, 163 Atl. 856 (1933), involving a bill of sale that was held to be a chattel mortgage. Within three years after the date of the Attorney General's opinion, however, this Court had occasion to say in *Phillips v. J. F. Johnson Lumber Co., supra* (at p. 542 of 218 Md.) that a description in a chattel mortgage is sufficient to bind a third party without actual notice if it is such as to enable him, aided by inquiries which the mortgage itself suggests, to identify the mortgaged property. Had the purchaser, who had seen at least thirty 1959 Chevrolet two-door sedans on the sales lot, examined the conditional sales records and inquired of the bank as to whether it still had title to the automobile he would have had actual notice that the automobile was encumbered. Not having done so, the information set forth in the conditional sales agreement was sufficient constructive notice to the purchaser that the bank had title to the automobile it subsequently repossessed from him.

(iii)

The contention that the bank was estopped from asserting ownership of the automobile, because it permitted the dealer to

take possession of and hold the apparently lien-free certificate of title to the motor vehicle for the purpose of reselling it, disregards the fact that the bank had recorded the conditional sales agreement for the purpose of giving notice to prospective purchasers that it had a security interest in the automobile, the details of which would be disclosed upon inquiry.

That the enactment of § 66 of Article 21 was intended to set up a simple method of giving notice of the conditional sale of goods for resale without the necessity of recording the security agreement in toto is shown by the fact that the Legislature, having previously adopted that part of the Uniform Sales Act, formerly codified as § 41 of Article 83,[3] concerning a sale by a person who is not the owner, did not adopt that part of the Uniform Conditional Sales Act which would have protected a bona fide purchaser of goods for resale even when the contract had been recorded.

That the seller or his assignee will prevail in a case such as this, where an automobile is sold to a dealer under a conditional sales agreement which is recorded and a third person purchases the auotmobile from the dealer without actual notice that the dealer had conditional possession only, was definitely decided by this Court in *Finance and Guaranty Co. v. Defiance Motor Truck Co.,* 145 Md. 94, 99, 125 Atl. 585 (1924), where the factual situation was similar to that in the case at bar, when it said:

---

3. Section 41 of Article 83, now repealed, in addition to providing:
"(1) Subject to the provisions of this subtitle, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the sellers authority to sell,"
also provided:
"(2) Nothing in this subtitle, however, shall affect: (a) The provisions of any factor's acts [,] recording acts [such as § 66 of Article 21], or any enactment enabling the apparent owner of goods to dispose of them as if he were the true owner thereof."

"The plain answer to [the] contention [in favor of the bona fide purchaser] is that the public policy of a state is the policy which its people speaking through their legislature adopt * * *. And in answer to the suggestion that the operation of the statute under circumstances such as those involved in this case may result in loss to an innocent purchaser for value, it is sufficient to say, first, that if that is so, then it must be corrected by the legislature and not by the courts, and second, that it is without substantial merit, because where such an agreement is spread on the public records under the provisions of a public general law, any person of ordinary prudence would, by the exercise of reasonable care, learn of its existence before purchasing property affected by it."

The decision in that case had the effect of protecting a seller or assignee over a purchaser who had constructive notice that the dealer did not have title to the automobile. Furthermore, as was indicated in part (i) of this opinion, the protection afforded the bank in the case at bar by the recording of the security agreement had not been undone by the enactment of § 157 of Chapter 407 of the Laws of 1920 (the pertinent part of which, as subsequently repealed and reenacted, are now codified as § .24(a)(3) or § 47(b) of Article 66½), requiring the notation of all liens and encumbrances on the certificate of title to a motor vehicle. It therefore follows that the bank was not estopped from repossessing the automobile, and we so hold. In so doing, we are not unmindful that some courts in other states have reached the opposite conclusion under somewhat similar circumstances, but we do not find such decisions persuasive under the law of this state and the facts of this case. Since we shall affirm the judgment we do not reach the only remaining question as to punitive damages for the alleged wrongful repossession.

*Judgment affirmed; appellant to pay the costs.*