**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 18-1198**

─────────────

ERIE INSURANCE COMPANY, a/s/o Minh Nguyen and Anh Nguyen,

               Plaintiff - Appellant,

     v.

AMAZON.COM, INC.,

               Defendant - Appellee,

and

EBAY, INC.,

               Defendant.

─────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Roger W. Titus, Senior District Judge. (8:16-cv-02679-RWT)

─────────────

Argued: March 21, 2019                      Decided: May 22, 2019

─────────────

Before GREGORY, Chief Judge, and NIEMEYER and MOTZ, Circuit Judges.

─────────────

Affirmed in part and reversed in part by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Motz joined. Judge Motz wrote a concurring opinion.

─────────────

**ARGUED:** John Kerry Weston, SACKS WESTON DIAMOND, LLC, Philadelphia, Pennsylvania, for Appellant. William Brendan Murphy, PERKINS COIE LLP, Seattle, Washington, for Appellee. **ON BRIEF:** Jesse M. Cohen, SACKS WESTON DIAMOND, LLC, Philadelphia, Pennsylvania, for Appellant. Eric D. Miller, Laura Hill, PERKINS COIE LLP, Seattle, Washington, for Appellee.

---

NIEMEYER, Circuit Judge:

The main issue before us is whether Amazon.com, Inc., is subject to liability for a defective product that a customer purchased on its website from a third-party seller with Amazon "fulfilling" the transaction by storing the product and shipping it to the customer.

Trung Cao of Montgomery County, Maryland, purchased a headlamp on Amazon's website and then gave it to friends as a gift. The headlamp's batteries apparently malfunctioned, igniting the friends' house and causing over $300,000 in damages. Erie Insurance Company, which insured the house, paid the loss and now, as subrogee, is pursuing this action to obtain reimbursement from Amazon for negligence, breach of warranty, and strict liability in tort, arguing that Amazon has liability under Maryland law because it was the "seller" of the headlamp. In particular, Erie contends (1) that, based on the services that Amazon provided in the transaction, it was a seller; (2) that, in any event, Amazon was a "distributor," which Maryland law deems to be a seller; and (3) that Amazon was an "entrustee," as the term is used in Maryland's Uniform Commercial Code, and therefore Amazon passed title to the purchaser of the headlamp and thus should be considered a seller.

On Amazon's motion, the district court granted summary judgment to Amazon, concluding that Amazon was not the seller of the headlamp and therefore did not have liability for its defective condition. It also held that Amazon was immune from suit under the Communications Decency Act, 47 U.S.C. § 230(c)(1), a federal law protecting internet intermediaries in the online publication of a third-party's information.

3

While we conclude that in this case Amazon is not immune under § 230(c)(1), we do agree with the district court that, in the circumstances of the transaction before us, Amazon was not the "seller" of the headlamp and therefore did not have liability under Maryland law for products liability claims asserted by reason of the product's defective condition.

I

On April 9, 2014, Trung Cao, a resident of Montgomery County, Maryland, purchased online an LED headlamp — "for cycling, camping, [and] hiking" — and gave it as a gift to his friends, Minh and Anh Nguyen, who lived in Burtonsville, also in Montgomery County. Two weeks later, the headlamp malfunctioned, supposedly from a defective battery or batteries, igniting the Nguyens' house and causing $313,166.57 in damages. Erie Insurance Company, the Nguyens' insurer, paid the loss.

Cao purchased the headlamp on Amazon's website, and the document evidencing the transaction stated that the headlamp was "sold by: Dream Light" — and "Fulfilled by: Amazon." There can be no dispute that this information was displayed to Cao on the website when he purchased the headlamp. The headlamp was paid for by credit card and delivered to Cao on April 11, 2014, by UPS Ground.

The arrangement between Dream Light and Amazon was governed by Amazon's comprehensive "Amazon Services Business Solutions Agreement" and included "fulfillment" services offered by Amazon. Under the fulfillment program, Amazon provided logistics services for a fee. The seller could ship its inventory to an Amazon

4

warehouse for storage and, once an order was received online for a product, Amazon would retrieve the product from inventory, box it, and ship it to the purchaser. In this case, Dream Light shipped its headlamps to Amazon's warehouse in Virginia, and, when Cao's order for one came in, Amazon packaged and shipped it to Cao using the third-party shipper, UPS Ground. As part of its fulfillment services, Amazon also collected payment and, after withdrawing its service fee, remitted the balance to Dream Light. Dream Light set the price for the headlamp and created the content of the product's description used on the Amazon site. While Dream Light was also allowed under the program to "offer any warranty," apparently no explicit warranty information was provided in this case.

After paying the fire loss, Erie Insurance Company, as subrogee, commenced this action against Amazon, asserting products liability claims based on its allegation that Amazon was the "seller" of the headlamp and therefore had the liability attributable to sellers of defective goods under Maryland law.

On Amazon's motion, the district court granted summary judgment to Amazon, concluding that Amazon was not the "seller" and therefore was not liable to Erie. In reaching that conclusion, the court focused on the nature of Amazon's fulfillment services program:

> The question is whether the circumstances of this case in which Amazon "fulfilled" the order converts Amazon into the status of the seller. . . . The fulfillment role as far as Amazon is concerned is that it stored the product at the expense and risk of the seller Dream Light. That it allowed the merchandise to be advertised on Amazon's webpage. That if a purchase was made, Amazon would take the product from its fulfillment center, put

5

it in a box and send it to the purchaser who made arrangements to buy the Dream Light.

Amazon would collect the money and ultimately remit to Dream Light whatever is leftover after Amazon has covered its various charges . . . .

* * *

I conclude that the case can be disposed of favorably to Amazon on summary judgment because it is not a seller.

The court also concluded that the Communications Decency Act "would preclude the claims in any event." From the district court's judgment dated January 11, 2018, Erie filed this appeal.

## II

At the outset, we address Erie's contention that the district court erred in holding that Amazon was immune from suit under the Communications Decency Act, which provides immunity "not only from ultimate liability [as the publisher or speaker of information], but also from having to fight costly and protracted legal battles." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (cleaned up). The district court held that the Act applied in this case because Amazon *controlled the content* of Dream Light's offer of sale for its headlamp, noting that Amazon had "standards governing the third-party content and controlled the user experience and what the content — what content was displayed." Erie argues, however, that the Act does not apply, positing that if its claims "sought to hold Amazon liable for a misrepresentation made by Dream Light in its Amazon advertisement, then the Communications Decency Act might apply." But, it notes, its claims were "based, not on . . . internet content, but

6

on Amazon's own affirmative actions as a seller (or distributor) of products. . . . The Communications Decency Act does not insulate Amazon from liability for its own tortious acts and seller warranties."

The Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The Act defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server," *id*. § 230(f)(2), and "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service," *id.* § 230(f)(3).

By its terms, therefore, the Act provides immunity for claims against providers of interactive computer services, such as Amazon, "as the *publisher or speaker of any information provided by another information content provider*." 47 U.S.C. § 230(c)(1) (emphasis added). Thus, to implicate the immunity of § 230(c)(1), a claim must be based on the interactive computer service provider's publication of a third party's speech. *See Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997) (concluding that "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone or alter content — are barred"); *id*. (noting that the Act was enacted, "in part, to maintain the robust nature of Internet communication"); *see also Nemet*, 591 F.3d at 254 ("Congress

7

carved out a sphere of immunity from state lawsuits for providers of interactive computer services to preserve the vibrant and competitive free market of ideas on the Internet" (cleaned up)).

The products liability claims asserted by Erie in this case are not based on the publication of another's speech. The underpinning of Erie's claims is its contention that Amazon was the *seller* of the headlamp and therefore was liable as the seller of a defective product. There is no claim made based on the *content of speech published* by Amazon — such as a claim that Amazon had liability as the publisher of a misrepresentation of the product or of defamatory content. *See Nemet*, 591 F.3d at 252 (protecting postings published on the Internet that were "false and harmful to [the plaintiff's] reputation"); *Zeran*, 129 F.3d at 328 (protecting against liability for the delay in removing from the Internet "defamatory messages" posted by unidentified third-parties). While the Communications Decency Act protects interactive computer service providers from liability *as a publisher of speech*, it does not protect them from liability as the seller of a defective product.

Accordingly, we reverse the district court's ruling applying the Communications Decency Act's immunity to this case.

## III

On the merits, Erie contends that Amazon, like a brick-and-mortar store such as Home Depot, is a seller of products and therefore is liable under Maryland law for the defective products that it sells. While it acknowledges that the document evidencing the

8

transaction in this case indicated that Dream Light was the seller, it argues that Amazon, through its fulfillment services program, took so much control over the transaction that it effectively became the seller and therefore became responsible under theories of negligence, breach of warranty, and strict liability in tort. As Erie states, Amazon controls "significant aspects of th[e] transaction," "put[ting] [it] in the position of a seller. It doesn't make [Amazon] any different than if you go to a Home Depot and . . . bought the same product from a Home Depot." The reality, it argues, was that Dream Light's role in the sale was "passive," while "Amazon was the actor, the controlling party." In support of this position, Erie notes:

> The purchaser ordered from Amazon, using Amazon's website. The purchaser paid Amazon directly. Amazon packaged the product, in Amazon's warehouse, delivered it to the carrier, assumed the risk of credit card fraud, received payment, collected Amazon's fee, and presumably forwarded any remaining balance to Dream Light. The purchaser never had direct contact — or, really, privity of any sort — with Dream Light. The contract was between him and Amazon, not between him and Dream Light.

Erie thus reasons, "The purchaser, of course, reasonably assumed that title passed directly from Amazon to him, inasmuch as all of his dealings were with Amazon."

As both parties observe, products liability under Maryland law, whether asserted under theories of negligence, breach of warranty, or strict liability in tort, is imposed on sellers and manufacturers (a manufacturer also being a seller). As Maryland courts have explained, "Irrespective of whether the theory of recovery is breach of warranty, negligence or strict liability, a plaintiff must show three product litigation basics — defect, *attribution of defect to seller*, and a causal relationship between the defect and the injury." *Laing v. Volkswagen of Am., Inc.*, 949 A.2d 26, 39 (Md. Ct. Spec. App. 2008)

9

(emphasis added) (cleaned up); *see also Ford Motor Co. v. Gen. Accident Ins. Co.*, 779 A.2d 362, 369 (Md. 2001) ("We consistently have held that a plaintiff must prove the existence of a defect at the time the product leaves the manufacturer [or seller] to recover on the implied warranty claim, as well as with regard to strict liability and negligence claims"). The defect must be shown to exist at the time the product left the seller (whether manufacturer, distributor, or retailer) or at the time the sale was made. But in each case Maryland law imposes liability *on the seller. See, e.g.*, Md. Code, Com. Law § 2-314 (providing that a warranty that goods are merchantable is implied "in a contract for their *sale*" and providing that the "seller" includes "the manufacturer, distributor, dealer, wholesaler or other middleman or the retailor" (emphasis added)); *id.* § 2-315 (providing that the implied warranty of fitness for particular purpose is enforced against the "seller" of the goods); Restatement (Second) of Torts § 402A (1965) (adopted in Maryland by *Phipps v. Gen. Motors Corp.*, 363 A.2d 955, 963 (Md. 1976)) (imposing strict liability on "*[o]ne who sells* any product in a defective condition unreasonably dangerous to the user or consumer or to his property" (emphasis added)). Moreover, Maryland courts have repeatedly noted that products liability claims sounding in negligence, breach of warranty, and strict liability in tort overlap, all focusing on the liability *of a seller* for a defective product. *See Miles Labs., Inc. v. Doe*, 556 A.2d 1107, 1123 (Md. 1989); *Laing*, 949 A.2d at 39. And we have no basis to conclude that Maryland's understanding of "seller" is not uniform throughout its products liability law. As *Laing* explained, "[i]rrespective of whether the theory of recovery is breach of

warranty, negligence or strict liability, a plaintiff must show . . . attribution of defect to seller." 949 A.2d at 39.

We also find no indication that the term "seller," as used in Maryland's products liability law, should be understood in any manner other than its ordinary meaning. And the ordinary meaning of "seller" is "one that offers [property] for sale," with "sale" defined as "the transfer of ownership of and the title to property from one person to another for a price." Merriam-Webster's Collegiate Dictionary 1129, 1097 (11th ed. 2007). Indeed, the Maryland Uniform Commercial Code adopts this definition precisely. *See* Md. Code, Com. Law § 2-103(1)(d) (defining a seller as "a person who sells or contracts to sell goods"); *id.* § 2-106 (defining a "sale" as "the passing of title from the seller to the buyer for a price").

We thus conclude that insofar as liability in Maryland for defective products falls on "sellers" and manufacturers (who are also sellers), it is imposed on owners of personal property who transfer title to purchasers of that property for a price. In this sense, a manufacturer, distributor, dealer, and retailer who own — *i.e.*, have title to — the products during the chain of distribution are sellers, whereas shippers, warehousemen, brokers, marketers, auctioneers, and other bailees or consignees, who do not take title to property during the course of a distribution but rather render services to facilitate that distribution or sale, are not sellers. *See, e.g.*, *Musser v. Vilsmeier Auction Co.*, 562 A.2d 279, 283 (Pa. 1989) (holding that auctioneers are not "sellers"). Consistent with this distinction, various courts have held that Amazon was not a seller under similar circumstances. *See, e.g.*, *Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879,

11

886–88 (Fed. Cir. 2017) (holding that Amazon was not the seller of a pillowcase allegedly infringing copyright law when the pillowcase was sold by a third party on Amazon's website and "fulfilled" by Amazon); *Oberdorf v. Amazon.com, Inc.*, 295 F. Supp. 3d 496, 501 (M.D. Pa. 2017) (holding that, under the Restatement (Second) of Torts § 402A, Amazon was not the seller of an allegedly defective dog leash that was sold by a third party on Amazon's website); *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 541–42 (D. Md. 2016) (holding that, under Maryland products liability law, Amazon was not the seller of batteries sold by a third party on Amazon's website).

In this case, no one has presented evidence to dispute that when Dream Light shipped its headlamp to Amazon's warehouse in Virginia, it was the owner of — *i.e.*, it had title to — the headlamp. And when it transferred possession of the headlamp to Amazon, without Amazon's payment of the headlamp's price or an agreement transferring title to it, Amazon did not, by that simple transfer, receive title. *See Jones v. State*, 498 A.2d 622, 623 (Md. 1985) (noting that a person can receive possession of goods without receiving title to them). Moreover, after Amazon received the headlamp at its warehouse, there was no action or agreement that amounted to the consummation of a sale of the headlamp by Dream Light to Amazon. Indeed, even as Amazon possessed the headlamp in its warehouse, Dream Light set the price for the sale of the product to purchasers, designed the product description for the website, paid Amazon for its fulfillment services, and ultimately received the purchase price paid by the purchaser. In these circumstances, as Amazon explicitly posted on its site, Dream Light was the seller.

12

Moreover, the agreement between Dream Light and Amazon governing their relationship confirms this, as it repeatedly specifies and contemplates that Dream Light, not Amazon, retained title to the goods it stored in Amazon's warehouses as part of the fulfillment program. *See Huettner v. Sav. Bank of Balt.*, 219 A.2d 559, 561–62 (Md. 1966) (explaining that a contractual agreement may determine which party retains title); *see also* Md. Code, Com. Law § 2-401(1) ("[T]itle to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties"). For example, under the agreement, if Dream Light were to request that Amazon dispose of the headlamps that it stored in Amazon's warehouse, then, upon receipt of Dream Light's request, "title to each disposed unit [would] transfer to [Amazon]." Of course, this indicates that title otherwise remained with Dream Light.

Finally, Amazon stated in an affidavit filed with its summary judgment motion that it "did not . . . hold title to the headlamp," and Erie presented no evidence to the contrary.

While Amazon does in fact sell products that it owns on its website and thus would be considered a seller of *those* products, in this case it facilitated the sale for Dream Light under its fulfillment program. We thus conclude that Dream Light was the seller, as Cao was so informed on the site, and there is no evidence to indicate that title passed other than from Dream Light to Cao. Although Amazon's services were extensive in facilitating the sale, they are no more meaningful to the analysis than are the services provided by UPS Ground, which delivered the headlamp to Cao. Neither Amazon nor UPS Ground was a seller incurring liability for the defective product.

Erie argues that Amazon was an "entrustee" under Maryland's Uniform Commercial Code and contends that, as entrustee, it was authorized to transfer title to Cao and should thus be deemed a seller. The relevant provisions, however, do not support the argument. They provide:

> (1) A purchaser of goods acquires all title *which his transferor had or had power to transfer* except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. . . .
>
> (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights *of the entruster* to a buyer in ordinary course of business.
>
> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

Md. Code, Com. Law § 2-403 (emphasis added).

Section 2-403 does not make Amazon a seller. To the contrary, it authorizes Amazon, as an entrustee — *i.e.*, as a bailee or consignee — to pass *Dream Light's rights* to the buyer in the ordinary course of business. Moreover, the purpose of this provision is "to safeguard unsuspecting buyers who purchase goods from merchants in good faith," *Great Am. Ins. Co. v. Nextday Network Hardware Corp.*, 73 F. Supp. 3d 636, 640 (D. Md. 2014), and it does not in any sense create products liability for Amazon as an entrustee. Indeed, § 2-403 "only applies when a rightful owner attempts to sue a buyer after the buyer purchases goods from a merchant." *Id.* Erie has made no argument addressing why Amazon as entrustee would somehow have title or would be liable as a seller. To the contrary, when Dream Light sent the headlamp to Amazon, it authorized

14

Amazon to sell the headlamp *on behalf of Dream Light*, and thus Amazon was only authorized to convey Dream Light's title to the purchaser, Cao. And again, Amazon recognized this by noting on the webpage that the headlamp was "sold by Dream Light." In short, Amazon functioned much like an auctioneer, a broker, a consignee, or a bailee, none of whom actually possesses title but nonetheless is, if it is a merchant, authorized to effect a transfer to the buyer of title held by the owner — *i.e.*, the seller.

Erie also argues, relying on Md. Code, Com. Law § 2-401, that because Amazon provided for the delivery of the headlamp to Cao, it was Amazon who sold the headlamp. *See id.* § 2-401(2) ("Unless otherwise explicitly agreed[,] title passes to the buyer at the time and place at which the seller completes his performance with respect to the physical delivery of the goods . . ."). First of all, the argument fails most obviously because UPS Ground, not Amazon, delivered the headlamp to Cao, and under Erie's argument, UPS Ground would then have been the seller even though it never held title. But more fundamentally, § 2-401(2) simply instructs *when* title passes, (*i.e.*, upon delivery), but does not state that the person making delivery is the person holding and transferring title. In this case, delivery was accomplished by UPS Ground on instructions from Amazon, which was facilitating the transaction for Dream Light, the owner of the product being delivered.

Erie next argues, relying on the Restatement (Second) of Torts § 402A, that Amazon in any event is liable as a "distributor." Comment (f) to § 402A states, "The rule stated in this Section [imposing strict liability] applies to any person engaged in the business of selling products . . . [and] therefore applies to any manufacturer of such a

15

product, to any wholesale or retail dealer or *distributor*, and to the operator of a restaurant." *Id*. § 402A cmt. f (emphasis added). Erie argues, accordingly, that Amazon as distributor need not be a seller to have § 402A liability. But Erie does not recognize that each of the entities enumerated in Comment (f) is a type of seller that is addressed in the text of § 402A and that the text of § 402A explicitly imposes strict liability on "one *who sells* any product in a defective condition." (Emphasis added). Erie would, by its argument, eliminate from § 402A the "seller" requirement, and it would thus impose strict liability on *any entity* who participates in the chain of distribution, including shippers, warehousemen, consignees, and deliverers — in this case, UPS Ground. *See Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633, 643–44 (Md. 1992).

At bottom, we conclude that Amazon was not, in this particular transaction, a seller — one who transfers ownership of property for a price — and therefore does not have the liability under Maryland law that sellers of goods have. To be sure, when Amazon sells its own goods on its website, it has the responsibility of a "seller," just as any other retailer, such as Home Depot, would have. But when it provides a website for use by other sellers of products and facilitates those sales under its fulfillment program, it is not a seller, and it does not have the liability of a seller.

\* \* \*

In sum, we reverse the district court's ruling that Amazon was immune under the Communications Decency Act, but we affirm its judgment that Amazon was not, in the circumstances of this case, a seller and therefore did not have liability under Maryland law for the allegedly defective product sold on its website by Dream Light.

16

AFFIRMED IN PART AND REVERSED IN PART

DIANA GRIBBON MOTZ, Circuit Judge, concurring:

I concur fully in the court's opinion rejecting Erie's claims that Amazon is a "seller" under Maryland law. I write separately to emphasize why this may not always be so.

Although at the moment, Maryland law supports the result we reach, much of the State's product liability law was adopted at a time when the American economy operated much differently than it does now. *See Phipps v. Gen. Motors Corp.*, 363 A.2d 955, 963 (Md. 1976) (adopting strict liability standard from Restatement (Second) of Torts § 402A). In a traditional supply chain, manufacturers transfer new goods to consumers through multiple links, with each link in the chain — from manufacturer to distributor to retailer — taking title to, and possession of, the product. Because seller liability extends to manufacturers, distributors, and retailers alike, the consumer at the end of this supply chain almost always has some legal recourse in the event of an injury, for some entity in this linear supply chain is clearly a "seller" and available for service of process within the United States.

But Amazon disrupts the traditional supply chain. By design, Amazon's business model cuts out the middlemen between manufacturers and consumers, reducing the friction that might keep foreign (or otherwise judgment-proof) manufacturers from putting dangerous products on the market. Today, Amazon makes up at least 46 percent of the online retail marketplace, selling more than its next twelve online competitors combined. Lina M. Khan, Note, *Amazon's Antitrust Paradox*, 126 Yale L.J. 710, 712–13 (2017). Yet Amazon's business model shields it from traditional products liability

18

whenever state law strictly requires the exchange of title for seller liability to attach, in many cases forcing consumers to bear the cost of injuries caused by defective products (particularly where the formal "seller" of a product fails even to provide a domestic address for service of process).

Indeed, Amazon played an outsized role in the transaction at issue in this case. Trung Cao, the purchaser of the allegedly defective headlamp, ordered the product from Amazon's website and paid Amazon directly. Amazon took physical possession of the product, warehoused it, packaged it, and delivered it to the carrier. Amazon even assumed the risk of credit card fraud, received payment, and remitted a portion of that payment to the manufacturer. Nearly the only thing Amazon did not do was hold title.

I agree that, under Maryland law as it stands today, that final fact — which is surely no accident — resolves this case in Amazon's favor. But that may not always be so. Indeed, Maryland's highest court has repeatedly emphasized that considerations of public policy may justify a change in the common law when, "in light of changed conditions or increased knowledge, the former rule has become unsound in the circumstances of modern life." *Miles Labs., Inc. Cutter Labs. Div. v. Doe*, 556 A.2d 1107, 1117 (Md. 1989); *see also May v. Air & Liquid Sys. Corp.*, 129 A.3d 984, 989–1000 (Md. 2015) (expanding duty to warn in asbestos case based on policy considerations). And the Supreme Court, interpreting federal antitrust law, recently held that consumers purchasing third-party digital applications on a marketplace operated by a major technology corporation nonetheless qualified as "direct purchasers" from that

corporation. *Apple Inc. v. Pepper*, No. 17-204, 2019 WL 2078087, at \*3 (U.S. May 13, 2019).

A federal court sitting in diversity, however, must proceed with caution. Our charge is to take state law as we find it "or, if necessary, predict how the state's highest court would rule on an unsettled issue." *Askew v. HRFC, LLC*, 810 F.3d 263, 266 (4th Cir. 2016) (internal quotation marks omitted). Given the policy-intensive nature of this inquiry, the lack of on-point Maryland precedent, and Amazon's novel business model, I cannot confidently predict that Maryland courts would treat Amazon as a seller under state law. Nor do I believe it appropriate, in the absence of a request from either party, to certify this question to the Court of Appeals of Maryland on this court's own initiative.

Even so, nothing in today's holding prevents Maryland's own courts or legislators from taking up and resolving these difficult, fast-changing, and cutting-edge issues differently. To be sure, Amazon's strategy of removing nearly every products liability case to federal court has complicated this endeavor and arguably stunted the development of state law.[*] But legislative reforms, non-removable lawsuits, and (in appropriate cases) certification remain available to consumers and state leaders who seek to confront these uniquely modern challenges.

---

[*] *See, e.g.*, *Allstate N.J. Ins. Co. v. Amazon.com, Inc.*, No. 17-cv-7238 (FLW) (LHG), 2018 WL 3546197, at \*4 (D.N.J. July 24, 2018); *Fox v. Amazon.com, Inc.*, No. 3:16-cv-03013, 2018 WL 2431628, at \*1 (M.D. Tenn. May 30, 2018), *appeal docketed*, No. 18-5661 (6th Cir. June 25, 2018); *McDonald v. LG Elecs. USA, Inc.*, 219 F. Supp. 3d 533, 535 (D. Md. 2016). At oral argument, counsel for Amazon represented to us that Amazon had not removed such a case only once, and that was because a lack of complete diversity precluded Amazon from doing so. *See Stiner v. Amazon.com, Inc.*, 120 N.E.3d 885 (Ohio Ct. App. 2019).