NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MILO & GABBY LLC, KAREN KELLER,**
*Plaintiffs-Appellants*

**v.**

**AMAZON.COM, INC.,**
*Defendant-Appellee*

**DA FANG SUN, AKA SETH L, CHONGQIN WORLD FIRST ELECTRONIC COMMERCE CO., LTD., AKA WOTEFUSI, T. LIU, AKA BINGO DEAL, FAC SYSTEM, AKA FAC SYSTEM LLC, DINGDING ZOU, AKA HAPPY SUNDAY, QIUMEI ZHANG, AKA HITECE, CHARLOTTE XIA, NIMBLE JOY, AMANIALARASHI2165, MONAQO,**
*Defendants*

---

2016-1290

---

Appeal from the United States District Court for the Western District of Washington in No. 2:13-cv-01932-RSM, Judge Ricardo S. Martinez.

---

Decided: May 23, 2017

---

PHILIP P. MANN, Mann Law Group, Seattle, WA, argued for plaintiffs-appellants. Also represented by JOHN WHITAKER, Lane Powell PC, Seattle, WA.

JOHN HUGHES, Bartlit Beck Herman Palenchar & Scott LLP, Denver, CO, argued for defendant-appellee. Also represented by JOSEPH DOMAN, KATHERINE HACKER; GREGORY G. GARRE, JONATHAN Y. ELLIS, Latham & Watkins LLP, Washington, DC.

MARK P. WINE, Orrick, Herrington & Sutcliffe LLP, Irvine, CA, for amicus curiae eBay, Inc. Also represented by MATTHEW HERMAN POPPE, Menlo Park, CA.

_____

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges.*

O'MALLEY*, Circuit Judge.*

Milo & Gabby LLC and Karen Keller (collectively, "Milo & Gabby") appeal from decisions of the Western District of Washington finding that Amazon.com, Inc. ("Amazon"), through its provision of an online marketplace for third parties and its "Fulfillment by Amazon" services, does not infringe the patents, copyrights, and trademark of Milo & Gabby. Because the district court did not err in granting summary judgment on Milo & Gabby's copyright and trademark allegations, and because Milo & Gabby failed to preserve its patent infringement arguments, we *affirm*.

## I. BACKGROUND

### A. The Parties' Relevant Products and Services

Milo & Gabby designs and sells a line of "Cozy Companion" pillowcases. The Cozy Companion pillowcase line includes animal-shaped pillowcases for children that turn a child's pillowcase into a stuffed animal. Milo & Gabby

owns five U.S. design patents for the designs on its pillowcases that are relevant to this case. The company also holds copyrights for its pillowcases, its website, and various other marketing images, including pictures of the founders' children holding the pillowcases.

Amazon operates a website that offers an online marketplace for customers. Although Amazon sells some of the products available on its website, most of the products offered for sale on Amazon's website are offered by third-party sellers. When a third-party seller uses Amazon's website to sell a product, the seller provides information regarding the product, such as a product description, images of the product, and a price for the product. Amazon's website then automatically generates a "product-detail page" that displays the information and identifies the seller.

Amazon also offers third-party sellers a service called "Fulfillment by Amazon," which allows third-party sellers to take advantage of Amazon's logistical network. When using this service, a third-party seller sends its product to an Amazon fulfillment center, where Amazon stores the product. If a customer buys the product from the third-party seller, Amazon pulls the product off the shelf, packages it, and ships it to the customer on behalf of the seller. A third-party seller even can use this service when selling products outside of Amazon's online marketplace; for example, a third-party seller can use the service when selling the product on another website, such as eBay.

Third-party sellers using the Fulfillment by Amazon service maintain full ownership of the products stored by Amazon. The third-party seller using this service can

remove its stock at any time by requesting that Amazon return the product to the third-party seller.[1]

### B.  Sales of Knock-Off Pillowcases

When Milo & Gabby began selling their pillowcases, Karen and Steven Keller, the owners of Milo & Gabby, used pictures of their children with the pillowcases to promote the products.  In 2013, Milo & Gabby discovered pillowcases selling on Amazon's website that were knock-offs of Milo & Gabby's Cozy Companion pillowcases.  The depictions of the pillowcases for sale actually were of Milo & Gabby products, including depictions of the products being used by the Kellers' children.  But Amazon did not directly sell any of the knock-off pillowcases offered on Amazon's website.  The product-detail pages for the knock-off pillowcases identified ten different entities as third-party sellers.  Out of the ten third-party sellers selling the knock-off pillowcases, only one, FAC System, used the Fulfillment by Amazon service.

Milo & Gabby filed a complaint against Amazon on October 24, 2013.  Upon notice of the lawsuit, Amazon removed the product listings and suspended the third-party sellers from Amazon's online marketplace.  Some of

---

[1]  A limited exception to this policy exists under certain circumstances in which Amazon must dispose of the product.  If the exception applies, the agreement states that title will transfer to Amazon at no cost in order for Amazon to dispose of the product as it sees fit.  Although Milo & Gabby tries to use this limited exception to show that Amazon does obtain title to third-party products in some situations, the parties have presented no evidence to show that Amazon took title to any of the products at issue in this case.  Even if Amazon were to take title under the Fulfillment by Amazon agreement, it would do so only to dispose of the product, not to sell it.

the third-party sellers tried to relist the knock-off pillow-cases on Amazon's online marketplace by changing the product name, but Amazon removed the new listings and new sellers as soon as it learned of them.

## C. Procedural History

Milo & Gabby's complaint against Amazon asserted various state and federal claims, including patent infringement, copyright infringement, false designation of origin under the Lanham Act, and trademark counterfeiting under the Lanham Act. Relevant to this appeal, the district court granted in part Amazon's motion for summary judgment on July 16, 2015. *Milo & Gabby, LLC v. Amazon.com, Inc.* (*Summary Judgment Order*), No. C13-1932RSM, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16, 2015). The district court granted the motion as to direct copyright infringement because it found "no evidence in the record that Amazon actively reviewed, edited, altered or copied [Milo & Gabby's] images." *Id.* at *11. The district court further noted that "Amazon is not the seller of the alleged infringing products" because "third-party sellers retain full title to and ownership of the inventory sold by the third party." *Id.* at *15–16.

The district court also granted Amazon's motion for summary judgment as to Milo & Gabby's Lanham Act claims. The court found that Milo & Gabby had provided no evidence of any violation of a valid, enforceable mark entitled to protection under the Lanham Act. The court also rejected Milo & Gabby's "palming off" allegation because it found that Milo & Gabby had not raised the claim or alleged any facts in the complaint to put Amazon on notice of this theory.

The district court denied Amazon's motion for summary judgment as to Amazon's liability for direct patent infringement, however. Amazon argued that it never sold or offered to sell the products within the meaning of § 271(a). In response to Amazon's motion, Milo & Gabby

argued that Amazon was liable for direct patent infringement because it *offered to sell* the products; Milo & Gabby did not argue that Amazon "sold" the products, either individually or jointly. The district court determined that a factual question precluded summary judgment on the "offer to sell" theory.

Prior to trial on the direct infringement claim's "offer to sell" theory, Amazon filed a motion for attorney's fees and costs because of its status as a prevailing party under both the Copyright Act and the Lanham Act. The district court denied Amazon's motion with respect to the copyright claims, finding that they were not frivolous. But it granted Amazon's request with respect to the Lanham Act claims, finding that Milo & Gabby "essentially pursued a claim for which they had no evidentiary basis, and then attempted to circumvent that problem by improperly raising legal arguments never pled in their Complaint." *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932RSM, 2015 U.S. Dist. LEXIS 117213, at *12 (W.D. Wash. Sept. 1, 2015). The district court also found that Milo & Gabby had ignored the court's dismissal of the Lanham Act claims and continued to argue that it would pursue its Lanham Act claims at trial; the court found that Milo & Gabby's "apparent willful ignorance of the Court's dismissal of their Lanham Act claims serves as another basis to find frivolousness in this matter." *Id.* at *13. The court therefore found the case exceptional under the Lanham Act and awarded attorney's fees and costs. *Id.*

As trial approached, the parties agreed that the remaining question, whether Amazon offered the products for sale, was a question of law for the district court to decide. *See Milo & Gabby, LLC v. Amazon.com, Inc.*, 144 F. Supp. 3d 1251, 1252 (W.D. Wash. 2015). The district court empaneled an advisory jury to answer underlying factual questions. *Id.* After trial, the jury found in favor of Amazon on all of the factual questions. *Id.* Based on

the jury's findings and the evidence presented at trial, the district court determined that Amazon did not offer to sell the products at issue. *Id.* at 1252–53.

## II. JURISDICTION

Milo & Gabby timely filed a notice of appeal. Before proceeding to the merits, we must satisfy ourselves of our subject matter jurisdiction over the appeal. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 575 (1999). We have jurisdiction over "appeal[s] from . . . final decision[s] of . . . district court[s] of the United States . . . in any civil action arising under . . . any Act of Congress *relating to patents*." 28 U.S.C. § 1295(a)(1) (2012) (emphasis added).

In its opening brief to this court, Milo & Gabby neither cites to Title 35 of the U.S. Code, which governs patents, nor presents any arguments raising issues specific to patent law. *See* Appellants' Br. 3, 20–43. In fact, Milo & Gabby only uses the word "patent" four times in the argument section of its opening brief, and the word appears each time in a header or an introductory sentence applying equally to Milo & Gabby's copyright infringement claim. *Id.* at 20, 29. In contrast, Milo & Gabby focuses almost exclusively on its copyright and trademark claims, and it repeatedly cites Title 17 of the U.S. Code, which governs copyrights, and Title 15 of the U.S. Code,[2] which governs trademarks. *See id.* at 29–43.

Nevertheless, Milo & Gabby's complaint alleges patent infringement, J.A. 156, and "Federal Circuit jurisdiction depends on whether the plaintiff's complaint as amended raises patent law issues," *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1189 (Fed. Cir.

---

[2]    Although Milo & Gabby does not cite to Title 15 itself, it repeatedly refers to the Lanham Act, which is codified in Title 15 of the U.S. Code.

2004) (citations omitted).  We therefore have jurisdiction over the case pursuant to 28 U.S.C. § 1295(a)(1) (2012).

## III. DISCUSSION

We review a district court's grant of a motion for summary judgment under the law of the regional circuit. *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharm. LP*, 661 F.3d 1378, 1381 (Fed. Cir. 2011).  The Ninth Circuit reviews the grant of a motion for summary judgment de novo. *Universal Health Servs. Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).  We review the district court's award of attorney's fees under the Lanham Act for abuse of discretion.  *See Highmark Inc. v. Allcare Health Mgmt. Sys.*, 134 S. Ct. 1744, 1748–49 (2014); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756; *see also Sunearth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) ("We agree with the majority of our sister circuits and conclude that *Octane Fitness* and *Highmark* have altered the analysis of fee applications under the Lanham Act. . . . Pursuant to *Highmark*, our review of the district court's decision on fees awarded under the Lanham Act is for abuse of discretion.").

On appeal, Milo & Gabby argues that the district court erred in its analysis of the patent infringement, copyright infringement, and trademark infringement issues.  Milo & Gabby also argues that the district court abused its discretion in awarding attorney's fees to Amazon.  Although Milo & Gabby's notice of appeal identifies twelve separate decisions by the district court that form the basis of this appeal, J.A. 1–3, its opening brief does not identify which of its arguments applies to which decision below and does not articulate the appropriate standard of review or the legal framework for each claim on appeal.  "It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."  *United States v. Great Am. Ins. Co.*, 738

F.3d 1320, 1328 (Fed. Cir. 2013) (citation omitted); *see also Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983) (finding waiver when "counsel has made no attempt to address the issue" because "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them"). Nevertheless, we consider each of these issues in turn.

## A. Patent Infringement Claim

On appeal, Milo & Gabby does not argue that Amazon is liable for patent infringement based on an "offer to sell" theory of infringement, which is the theory that it presented to the district court, both at the summary judgment stage and at trial. Instead, Milo & Gabby argues that the district court dismissed the patent infringement claim "based on its erroneous conclusion that Amazon is not a 'seller' of the accused products." Appellants' Br. 29. In making this argument, Milo & Gabby relies on its general contention that Amazon is a "seller" of the knock-off pillowcases.

Milo & Gabby's reliance on a "seller" theory of liability ignores both the procedural history of this case and its own abandonment of the theory. Although Milo & Gabby alleged in its complaint that Amazon "sold" the products it accused of violating its design patents, Milo & Gabby abandoned that argument at summary judgment. In response to Amazon's motion for summary judgment on patent infringement, in which Amazon argued that it had not "sold" or "offered to sell" the accused products, J.A. 455–56, Milo & Gabby responded by arguing only that Amazon offered to sell the products, J.A. 594–97. *Summary Judgment Order*, 2015 U.S. Dist. LEXIS 92890, at *33.

"It is a general rule that a party cannot revisit theories that it raises but abandons at summary judgment."

*USA Petroleum Co. v. Atl. Richfield Co.*, 13 F.3d 1276, 1284 (9th Cir. 1994) (collecting cases)[3]; *see also Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1352 (Fed. Cir. 1999) (concluding that a party's failure to raise an affirmative defense in opposition to a motion for summary judgment "constituted an abandonment of the defense"); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (Fed. Cir. 1999) (noting that the Eleventh Circuit "understandably concluded that the district court properly treated the plaintiff's alter ego theory 'as abandoned' and that the theory was 'no longer an issue in [the] case,'" when the defendant had moved for summary judgment on that theory and the plaintiff failed to address it in opposing the motion). "A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case." *BankAmerica Pension*

---

[3]     *See, e.g.*, *Vaughner v. Pulito*, 804 F.2d 873, 877 n.2 (5th Cir. 1986) (refusing to consider an Unfair Trade Practices and Consumer Protection claim because the party had failed to assert it as a basis for opposing a motion for summary judgment, and "[i]f a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal"); *Liberles v. Cty. of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."); *Edward B. Marks Music Corp. v. Cont'l Record Co.*, 222 F.2d 488, 492 (2d Cir. 1955) ("But a plaintiff in his opposition to a motion for summary judgment cannot abandon an issue and then, after an unpalatable decision by the trial judge, on appeal, by drawing on the pleadings resurrect the abandoned issue.").

*Plan v. McMath*, 206 F.3d 821, 826 (9th Cir. 2000) (citing *USA Petroleum*, 13 F.3d at 1282).

Here, Milo & Gabby had a full and fair opportunity to oppose Amazon's motion for summary judgment based on the "seller" theory it had referenced in its complaint. Milo & Gabby instead focused entirely on its "offer to sell" theory in its response. Milo & Gabby's failure to raise the "seller" theory under 35 U.S.C. § 271 (2012) in response to Amazon's motion for summary judgment on that exact issue constituted abandonment of the theory. *See USA Petroleum*, 13 F.3d at 1284. Milo & Gabby cannot raise the issue anew on appeal now that it has lost at trial on the "offer to sell" theory.

Because Milo & Gabby does not argue in this appeal that Amazon is liable for patent infringement based on the "offer to sell" theory similar to that addressed at trial, or even anything resembling such a theory, Milo & Gabby now has waived any argument as to its "offer to sell" theory of patent infringement. We therefore affirm the district court's judgment in favor of Amazon on the patent infringement claims because Milo & Gabby has failed to preserve either a "seller" or "offer to sell" argument for our consideration in this case. Milo & Gabby also did not appeal any claim regarding contributory or induced infringement, and did not assert a claim for joint infringement.

B. Copyright Infringement Claim

Milo & Gabby argues that the district court erred when it found Amazon not liable for copyright infringement because, in its view, Amazon is liable under 17 U.S.C. § 106 (2012) as both (1) a "seller" of the accused products, and (2) a "distributor" of the accused products. We consider each of these in turn.

### 1.  Milo & Gabby's "Seller" Liability Theory

As Amazon points out, one is not liable for copyright infringement unless it distributes copies of the copyrighted work "to the public . . . by sale or other transfer of ownership."  17 U.S.C. § 106(3).  Milo & Gabby contends that the district court erred in granting summary judgment to Amazon because Amazon did sell its copyrighted products to the public, or there is at least a material issue of fact regarding that question to prohibit judgment as a matter of law.  Milo & Gabby asserts that the term "sale" under § 106(3) of the Copyright Act should be given the same meaning we give the term "sale" under the Patent Act, 35 U.S.C. § 271.  Oral Arg. at 41:50–43:25, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2016-1290.mp3 ("[O]ur position all along . . . is that 'sale' is given its ordinary meaning . . . . Whether we are talking about copyright law, . . . whether we are talking about 271(a), generally 'sale' is the same.").  Amazon does not dispute that the two concepts are the same.  Indeed, neither party even cites to case law—from the Ninth Circuit or otherwise—discussing the meaning of the term "sale" in § 106(3) of the Copyright Act, relying instead on our case law under § 271.  We agree that there are clear parallels between the legal standards, with one caveat noted below.

Milo & Gabby argues that the district court erred by focusing on whether Amazon ever takes legal title to the products sold on its website in ruling that Amazon is not a seller of the accused products.  According to Milo & Gabby, there are "numerous circumstances" in which a party can be considered a seller of a product without taking legal title to the product.  Appellants' Br. 24.  In support of its assertion, Milo & Gabby points to various sections of the Uniform Commercial Code ("U.C.C."), including §§ 9-319, 2-707A, and 2-326.  Milo & Gabby also attempts to find support in the Supreme Court's decisions in *Pinter v. Dahl*, 486 U.S. 622, 642–43 (1988), and *Falk v. Brennan*,

414 U.S. 190, 199 (1973), and our decision in *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579–80 (Fed. Cir. 1994).

We conclude that Milo & Gabby has failed to show that Amazon was a "seller" under 17 U.S.C. § 106 based on its actions in this case. Turning to our case law as the parties urge that we do, we have considered the ordinary meaning of "sale" when addressing the term under § 271 and related patent-law provisions. *See, e.g.*, *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005). We have determined the ordinary meaning of "sale" by looking to dictionaries and the U.C.C. as persuasive authority. *See, e.g.*, *id.*; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1379 (Fed. Cir. 2014), *vacated on other grounds*, 136 S. Ct. 1923 (2016); *cf. Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1382 (Fed. Cir. 1998) (considering the plain meaning of "sale" when considering the use of the term in 19 U.S.C. § 1337). Section 2-106 of the U.C.C. defines a "sale" as consisting of "passing of title from the seller to the buyer for a price." U.C.C. § 2-106(1). Section 2-103 defines "seller" as "a person who sells or contracts to sell goods." U.C.C. § 2-103(1)(d). After considering dictionary definitions from *Black's Law Dictionary* and *Webster's Dictionary*, we also have explained that "the common[] or usual meaning of the term sale includes those situations in which a contract has been made between two parties who agree to transfer title and possession of specific property for a price." *Enercon*, 151 F.3d at 1382; *see also NTP*, 418 F.3d at 1319 (considering the definition of "sale" in *Black's Law Dictionary* and concluding that "the ordinary meaning of a sale includes the concept of a transfer of title or proper-

ty.").[4]  While we have made clear that our reference to the U.C.C. is a guide only and have explained that, at least in the context of the term "sale" under 35 U.S.C. § 102(b), passage of title is not of "talismanic" significance, we have found the presence or absence of passage of title to be a significant indicator of whether a sale has occurred in the patent law context.  *See Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1375–76 (Fed. Cir. 2016).

Milo & Gabby concedes that, if direct passage of title from Amazon to the purchasers of the "Cozy Companion" knockoffs is a predicate to Amazon's liability, then, in most instances, Amazon would not qualify as a seller. But Milo & Gabby points to the one entity—FAC System—that used the Fulfillment by Amazon service and argues that Amazon is a seller in that circumstance.  Milo & Gabby also argues that the U.C.C. recognizes that sales can occur in some instances where the seller does not hold title.

Turning first to FAC System's use of Amazon's fulfillment service, we see no difference in Amazon's status in that context.  Though FAC System shipped its product to an Amazon warehouse for storage and Amazon boxed up and shipped the product when a sale was consummated on the website, Amazon never held title to the accused products.  *See* J.A. 2163–64.  Amazon therefore could not sell the product on its own, even if done on behalf of the third-party seller.  J.A. 2164.  The third-party seller also could request that Amazon return the product to the third-party seller at any time.  J.A. 2163.

Amazon, moreover, did not control what information or pictures were put on the product-detail page, nor did it

---

[4]  *Black's Law Dictionary* defines "sale" as "[t]he transfer of property or title for a price."  *Black's Law Dictionary* (10th ed. 2014).

control the price for which the product was sold. *See* J.A. 2136–46; J.A. 2159–61. FAC System, or other third-party sellers as applicable to their products, controlled these details at all times. *See id.* Amazon, therefore, was not responsible for the actual listing of the product for sale, consummating the sale, or transferring title. Instead, Amazon merely provided an online marketplace that third-party sellers could use to sell their products and then, in some instances when the third-party sellers used the additional Amazon services, shipped the products to the final destination. Thus, while Amazon's services made it easier for third parties to consummate a sale, the third parties remained the sellers. Because they are not before us, we do not consider questions of joint infringement, contributory infringement, or induced infringement.

Milo & Gabby next points out that the general rule that a "sale" involves the transfer of title has some exceptions. And, as we said in *Medicines*, the transfer of title does not have "talismanic significance" when determining whether a sale has occurred. *Id.* at 1376. We are unpersuaded, however, that our general insistence on transfer of title should be abandoned in the circumstances presented here.

Although Milo & Gabby identifies some situations in which a court might consider a party to be a seller even when it does not hold and transfer title to another party, Milo & Gabby has failed to show that any of the situations it identifies applies to Amazon. The U.C.C. sections addressed by Milo & Gabby do not address the circumstances at issue here. Milo & Gabby's argument that Amazon is engaged in consignment sales under § 9-319 of the U.C.C. fails on its face. Section 9-102 defines "consignment" as follows:

> "Consignment" means a transaction, regardless of its form, in which a person delivers

goods to a merchant for the purpose of sale and:

(A)  the merchant:

> (i)  deals in goods of that kind under a name other than the name of the person making delivery;

> (ii)  is not an auctioneer; and

> (iii)  is not generally known by its creditors to be substantially engaged in selling the goods of others;

(B)  with respect to each delivery, the aggregate value of the goods is $ 1,000 or more at the time of delivery;

(C)  the goods are not consumer goods immediately before delivery; and

(D)  the transaction does not create a security interest that secures an obligation.

U.C.C. § 9-102(20).  Although § 9-319 would only apply if Amazon had a consignment relationship with the third-party sellers that meets the definition of § 9-102(20), Milo & Gabby does not explain how Amazon's actions meet that definition.  Instead, Milo & Gabby merely asserts that the "sales by Amazon of the accused products are essentially consignment sales." Appellants' Br. 25.

Even Amazon's connection with FAC System through the Fulfillment by Amazon relationship has not been shown to meet the definition of a consignment sale. Among other possible reasons: (1) FAC System did not deliver the products to Amazon "for the purpose of sale" but instead for the purpose of logistics and shipping after a sale had been made through the website; and (2) there is no allegation that the aggregate value of the products

would have been $1,000 or more at the time of delivery. The commentary for this section also notes that an intermediary company shipping the products, as Amazon did here, would not be involved in a consignment agreement. U.C.C. § 9-102 cmt. 14. Section 9-319 simply does not apply to this case.

Milo & Gabby's citation to *Falk* to suggest that a consignee stands in the shoes of a seller is inapposite. At most, the case shows that, in some situations, a consignee might be considered to be in the same position as a seller who purchases the product before resale. *See Falk*, 414 U.S. at 199. But this reasoning would only apply if Milo & Gabby could show that Amazon has a consignment agreement with the relevant third-party seller. Milo & Gabby has not done that.

Milo & Gabby's reliance on U.C.C. § 2-707 is similarly unpersuasive. Section 2-707 states that a person in the position of a seller includes "as against a principal an agent who has paid or become responsible for the price of goods on behalf of his principal or anyone who otherwise holds a security interest or other right in goods similar to that of a seller." U.C.C. § 2-707. As Anderson on the U.C.C. explains, the purpose of § 2-707 is to "extend[] to persons regarded as being in the position of the seller certain of the remedies available to the seller. However, U.C.C. § 2-707 does not create an additional class of defendants who may be held liable to the buyer for breach of the sales contract." 4A Anderson U.C.C. § 2-707:3 (3d ed.); *see also Hart Honey Co. v. Cudworth*, 446 N.W.2d 742, 744 (N.D. 1989) ("The statute does not create an additional category of 'sellers' who will be liable to the buyer upon breach of the contract."). Milo & Gabby cannot use this section as a sword to expand Amazon's liability.

Milo & Gabby's final U.C.C. argument under § 2-326 is also unavailing. As an initial matter, Milo & Gabby

never raised § 2-326 before the district court as a basis for arguing that Amazon was a seller of the pillowcases. *See* J.A. 596–97 (raising arguments as to §§ 2-707 and 9-319 but never mentioning § 2-326). Because Milo & Gabby raised this issue for the first time on appeal, we treat this issue as waived. *See Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878 (9th Cir. 2003)) ("These arguments are raised for the first time on appeal, and because they were never argued before the district court, we deem them waived.").

Even if Milo & Gabby had not waived its argument, U.C.C. § 2-326 does not apply to this case. Section 2-326 involves, *inter alia*, "sale or return" transactions. Under this type of transaction, goods that a buyer obtains primarily for resale may be returned by the buyer to the seller even though they conform to the contract. U.C.C. § 2-326(1)(b). The official comments for this section make clear that a sale or return "is a present sale of goods which may be undone at the buyer's option." U.C.C. § 2-326 n.1; *see also Paramount Pictures Corp. v. Carol Publ'g Grp.*, 25 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) ("[A]lthough a buyer retains the right to return goods, a completed sale is generally deemed to have taken place and title passes to the buyer."). Even though a sale takes place between the buyer and the seller, the seller agrees "to take back the goods (or any commercial unit of goods) in lieu of payment if they fail to be resold." U.C.C. § 2-326 n.1. This definition does not match the relationship between Amazon and the third-party sellers here because, among other possible reasons: (1) there is no sale of the pillowcases from the third-party sellers to Amazon, and (2) there is no evidence that Amazon received the pillowcases with the underlying understanding that the third-party sellers would take the products back if the products failed to sell.

The U.C.C. sections Milo & Gabby cite provide no reason for us to stray from the general U.C.C. definition that a party must transfer title in a product to a buyer in order to be considered a seller. Although Milo & Gabby has shown that a party might be considered a seller or in the same position as a seller under some circumstances even when not transferring title, Milo & Gabby has failed to show that any of those circumstances applies to this case.

Milo & Gabby's reliance on *Pinter* and *North American Philips* does not change the analysis. In *Pinter*, the Supreme Court noted that a party not holding title in a security could be liable as a seller or offeror of unregistered securities under the Securities Act of 1933, Pub. L. No. 73-22, 48 Stat. 74. *See Pinter*, 486 U.S. at 642–47. From this analysis, Milo & Gabby pulls a single sentence to support its position: "In common parlance, a person may offer or sell property without necessarily being the person who transfers title to, or other interest in, that property." *Id.* at 642–43. This single sentence does not help Milo & Gabby. Putting aside the fact that the Court was considering an entirely different statutory scheme and was seeking to elicit Congressional intent with respect to that particular scheme, Milo & Gabby ignores what else the Court said in *Pinter*. First, the Court noted that the buyer-seller relationship in "traditional contractual privity" generally involves passing "title, or other interest in the security, to the buyer for value." *Id.* at 642.

Second, the Court said that the circumstances where a person without title can be a seller or offeror under the Securities Act are those where the person's actions are motivated by a desire to further his own financial interests—such as by receipt of a share of the profits from a sale—or those of the seller, rather than a desire to aid the buyer in consummating his desired purchases. In this context, the Court made two additional points: (1) being a substantial factor in the sale of unregistered securities is

not sufficient to render a defendant liable as a seller, and (2) the Securities Act does not impose liability on participants whose actions are collateral to the sales transaction. Milo & Gabby has not alleged that Amazon receives profits from the sale of the pillowcases or that its motivations were anything other than creating a platform for the benefit of both purchasers and owners to consummate their own deals. Based on Milo & Gabby's own allegations, Amazon's activities are more closely characterized as collateral to the sale itself.

*North American Philips* is likewise unhelpful for Milo & Gabby. Again, Milo & Gabby latches onto a single sentence to argue that we have previously addressed and determined that passing title "has very little to do with the tortious act of infringement." Appellants' Br. 24. But Milo & Gabby takes our statement—"Appellees have pointed to no policy that would be furthered by according controlling significance to the passage of legal title here," *N. Am. Philips*, 35 F.3d at 1579–80—entirely out of context. The quoted portion of the case merely addresses the effect of actions taken by the parties on the court's analysis as to whether it has personal jurisdiction over the parties. *Id.* One party in the case had argued for a test that restricted the location of an infringing act based on the sale of a product to the location where legal title passes from seller to buyer. *Id.* The court explained that the party had "failed to explain why the criterion should be the place where legal title passes rather than the more familiar places of contracting and performance." *Id.* at 1579. The court's clarification as to location of infringement for personal jurisdiction purposes has no relevance to whether a party that does not hold or pass title can be considered a seller.

To the extent, moreover, that we have been willing to find that a sale has occurred for some instances under the Patent Act where title has not transferred, Milo & Gabby has given us no reason to believe we should do the same

under the Copyright Act. While, given the absence of briefing on the topic, we do not purport to define the precise contours of 17 U.S.C. § 106(3), the term "sale" under § 106(3) appears to unequivocally require a transfer of ownership from the seller to the buyer. Grammatically, the text combines the term "sale" with "other transfer of ownership" between commas, indicating that the latter phrase modifies the term "sale."

The House Report to § 106 confirms this straightforward reading of § 106(3). H.R. Rep. No. 94-1476, at 62 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5676 ("As section 109 makes clear, however, the copyright owner's rights under section 106(3) cease with respect to a particular copy or phonorecord once he has *parted with ownership of it*." (emphasis added)). Treatises discussing the concept of sale under § 106(3) and the accompanying first sale doctrine under § 109 of the Copyright Act are to the same effect. In describing the first sale doctrine, Nimmer on Copyright states:

> In its core situation, Section 109(a) provides that the distribution right may be exercised solely with respect to the initial disposition of copies of a work, not to prevent or restrict the resale or other further transfer of possession of those copies. More colloquially, once the copyright owner first sells a copy of the work, his right to control its further distribution is exhausted. Moreover, although the initial disposition of that copy may be a sale, the identical legal conclusion applies to a gift or any other transfer of title in the copy. Therefore, the more accurate terminology would not be "first *sale*" but rather "first authorized disposition by which title passes."

2 Nimmer on Copyright § 8.12 (2017) (footnotes omitted). As is case law. *See, e.g., UMG Recordings, Inc. v. Augus-*

*to*, 628 F.3d 1175 (9th Cir. 2011) (focusing entire analysis of whether a first sale had occurred on the question of whether title was transferred in some way from the copyright owner to a third party). Thus, while we might view § 106(3) differently in different circumstances and upon further inquiry, we will not today depart from an insistence that Milo & Gabby show that Amazon obtained title to the goods at issue and transferred that title to the third-party purchasers before we will find Amazon liable as a seller of the copyrighted goods.

For all these reasons, we find that Milo & Gabby has failed to provide us any reason to find that Amazon is a seller of the pillowcases at issue. Because the third-party sellers retain title to the pillowcases at all times and Amazon, as relevant to this case, merely provides an online marketplace followed by logistical and shipping services after the third-party seller has completed its transaction with a buyer, Amazon is not a seller in this case for the purposes of copyright infringement under 17 U.S.C. § 106.

### 2. Milo & Gabby's "Distributor" Liability Theory

Milo & Gabby next contends that, "regardless of whether or not Amazon acts as a 'seller' (it does), there is no dispute that Amazon is liable for copyright infringement because it acts as a distributor of the infringing products and physical images." Appellants' Br. 31. Milo & Gabby asserts that the Fulfillment by Amazon service constitutes infringement of its exclusive right to distribute copies of the copyrighted work by "sale" or "other transfer of ownership" under 17 U.S.C. § 106(3). As addressed above, Milo & Gabby has failed to show that the Fulfillment by Amazon service constitutes a "sale" of the accused products in this case. Its "distributor" theory, therefore, depends on its argument that Amazon's actions meet the "other transfer of ownership" aspect of the statute and that such transfers need not include the

passage of title by the party allegedly effectuating the transfer.

After discussing alleged admissions by Amazon that it shipped the accused products for FAC System, the only third-party seller to use the Fulfillment by Amazon service, Milo & Gabby includes a single sentence addressing "other transfer of ownership" in its opening brief. Milo & Gabby states, "[a]lternatively, the transactions performed by Amazon easily constitute an 'other transfer of ownership' as contemplated under the Copyright Act." Appellants' Br. 34. In its initial brief, Milo & Gabby makes no attempt to explain what "other transfer of ownership" means, what constitutes an "other transfer of ownership," or how and why Amazon's conduct falls within the meaning of "other transfer of ownership." Its reply brief fares little better, as it only asserts that principles of statutory construction require that all clauses of a statute be given meaning and not rendered superfluous to the extent possible. Appellants' Reply Br. 24–26. Using this premise, Milo & Gabby contends that "other transfer of ownership" must have a broader, or at least different, definition than "sale," but Milo & Gabby still makes no attempt to give meaning to the clause.

Milo & Gabby's conclusory and passing reference to "other transfer of ownership" in its opening brief does not amount to a substantive argument that brings the issue before the court. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases from the First, Second, Third, Sixth, and Seventh Circuits). Because our law is well established that an argument must be raised in a party's opening brief and Milo & Gabby failed to raise this argument adequately in its opening brief, we consider this argument waived. *See id.* at 1319–20.

We note, moreover, that, based on the authorities cited above, whatever the phrase "other transfer of owner-

ship" might mean, it too would seem to require an actual transfer of title from the distributor to the recipient. *See* 2 Nimmer on Copyright § 8.12.

## C. Palming Off Claim

In dismissing the false designation of origin claim brought under the Lanham Act, the district court noted that Milo & Gabby raised arguments regarding palming off violations for the first time in response to Amazon's motion for summary judgment. *Summary Judgment Order*, 2015 U.S. Dist. LEXIS 92890, at *32. Federal Rule of Civil Procedure 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The intent of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Milo & Gabby argues that the district court erred in granting summary judgment on the palming off claim because the complaint contained sufficient factual allegations to put Amazon on notice of this claim. But Milo & Gabby never mentioned a palming off allegation or theory in its complaint. Indeed, Paragraph 36 of the complaint specifies that Milo & Gabby asserted their Lanham Act claim as a false designation of origin claim, not as a palming off claim. J.A. 157. A false designation of origin claim is broader than a palming off claim. *See Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7 F.3d 1434, 1437 (9th Cir. 1993) ("[T]he Lanham Act has progressed far beyond the old concept of fraudulent passing off, to encompass any form of competition or selling which contravenes society's current concepts of 'fairness.'" (internal quotation marks omitted) (quoting *Smith v. Montoro*, 648 F.2d 602, 604 (9th Cir. 1981)). Milo & Gabby's broad allegations of confusion, mistake, and deception under the umbrella of a false designation of origin claim

would not provide Amazon notice in the complaint that Milo & Gabby was pursuing a palming off claim.

Faced with the prospect that it did not adequately plead its palming off claim, Milo & Gabby attempts to save the claim by pointing to evidence outside the complaint. First, Milo & Gabby argues that it described its Washington state law unfair competition claim as a palming off claim in its opposition to Amazon's motion to dismiss. It asserts that an unfair competition claim under Washington state law is "essentially the same cause of action" as a palming off claim under the Lanham Act, Appellants' Br. 39, so it had "explicitly identified its legal theory based on [facts in the complaint] in its early pleading-stage filings," Appellants' Br. 41. Milo & Gabby also argues that Amazon understood that it faced a palming off claim based on a time entry made by Amazon's counsel that came to light after the court awarded fees to Amazon.

Milo & Gabby's resort to sources outside the complaint does not meet Milo & Gabby's legal requirement under Rule 8. The complaint, as opposed to some other brief or court filing, must be the document to contain the plain statement of the claim. *See, e.g.*, *ABB Turbo Sys. AG v. TurboUSA, Inc.*, 774 F.3d 979, 984 (Fed. Cir. 2014) ("Rule 8(a)(2) requires . . . that the *complaint* give the defendant fair notice . . . ." (emphasis added) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Milo & Gabby had to point to evidence in the complaint itself showing that it asserted a palming off theory under the Lanham Act. Because we conclude that the complaint's general allegations regarding a false designation of origin claim did not put Amazon on notice of an intent to pursue a palming off claim, we affirm the district court's dismissal of this claim.

## D. Attorney's Fees

Milo & Gabby argues that the court should overturn the district court's award of attorney's fees under the Lanham Act if it vacates the district court's dismissal of the Lanham Act claim. According to Milo & Gabby, reinstatement of the claim would mean that Amazon would no longer be a "prevailing party" under the Lanham Act such that an award of attorney's fees would be improper.

Because we find that the district court did not err in dismissing Milo & Gabby's palming off claim and Milo & Gabby made no separate argument regarding the fee award, we affirm the district court's award of attorney's fees.[5]

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment in this case.

## **AFFIRMED**

---

[5] Moreover, district court orders granting sanctions or attorney's fees are "separate order[s] which [are] not final and appealable until the district court has decided the amount." *Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012) (citation omitted). Because the district court has not ruled on the amount of the fee award, *see Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932RSM, 2015 WL 11234165 (W.D. Wash. Oct. 5, 2015), Milo & Gabby's challenge to the award of attorney's fees would be premature even if we were to find that the district court had erred in dismissing the Lanham Act claim.